UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| -v.- | 22 Cr. 635 (KPF) |
| AVREE LAMAR, | **ORDER** |
| Defendant. | |

KATHERINE POLK FAILLA, District Judge:

Defendant Avree Lamar moved for this Court to recommend that the Federal Bureau of Prisons (the "BOP") designate a New York State Correctional Facility as the place of confinement for service of Mr. Lamar's federal sentence, *nunc pro tunc.* (Dkt. #28). The Government opposed the request. For the reasons set forth in the remainder of this Order, the Court grants Mr. Lamar's motion.

## BACKGROUND

### A. The Proceedings in This Court

Mr. Lamar was charged in this District in a criminal complaint dated November 7, 2022, with possessing one or more firearms after having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). (Dkt. #1). Mr. Lamar had initially been arrested by the New York City Police Department (the "NYPD") on August 27, 2022, and had remained in the custody of the New York City Department of Corrections until being writted over to this Court. (Presentence Investigation Report ("PSR" (Dkt. #17)) ¶ 40). On November 21, 2022, Mr. Lamar was charged in a one-count indictment with possessing a

firearm and ammunition after having been convicted of a felony.  (Dkt. #5 ("Indictment")).

On December 2, 2022, the Court arraigned Mr. Lamar on the Indictment. (Dkt. #10 (transcript of arraignment)).  During the conference, the parties discussed with the Court issues regarding the production of discovery pursuant to Federal Rule of Criminal Procedure 16.  (*Id.* at 4-9).  Counsel for Mr. Lamar also discussed the possibility of a suppression motion based on the circumstances of his arrest.  (*Id.* at 7-10).  No discussion was had at that time of other pending criminal cases against Mr. Lamar.

On March 28, 2023, Mr. Lamar entered a plea of guilty to Count One of the Indictment pursuant to a written plea agreement with the Government. (Dkt. #14 (transcript of plea proceeding); PSR ¶ 5 (discussion of plea agreement); February 21, 2023 letter from U.S. Attorney's Office for the Southern District of New York to Richard Ma, Esq. (plea agreement signed by Mr. Lamar and his counsel on February 23, 2023)).  During the plea allocution, Mr. Lamar discussed with the Court a separate pending firearms prosecution that was being handled by the Kings County District Attorney's Office (the "KCDOA").  (Dkt. #14 at 18-19).  At the conclusion of the proceeding, the Court accepted Mr. Lamar's guilty plea and scheduled a sentencing date.  (*Id.* at 31-32).

In anticipation of Mr. Lamar's sentencing, the Probation Office prepared a Presentence Investigation Report (the "PSR").  Among other things, the PSR discussed Mr. Lamar's sentencing exposure under the United States

Sentencing Guidelines (the "Guidelines" or "U.S.S.G."), and concluded — in line with the parties' stipulations in the plea agreement — that the applicable Guidelines range was 24 to 30 months' imprisonment. (*Compare* PSR ¶ 5 (Guidelines stipulations in plea agreement), *with id.* ¶¶ 22-37 (Probation Office Guidelines calculations); *see also* PSR at 23 (sentencing recommendation of 24 months' imprisonment)).[1]  Also, as relevant here, the PSR related that Mr. Lamar had been arrested and charged with criminal possession of a weapon in New York State Supreme Court, Kings County, in a case that remained pending. (*Id.* ¶ 39).  The PSR noted that the next court date in that matter had been scheduled for July 31, 2023. (*Id.*).

Sentencing in this case was held on August 22, 2023. (Dkt. #25 (sentencing transcript); Dkt. #22 (judgment)).  During the sentencing proceeding, the Court discussed with the parties the interplay of Mr. Lamar's pending state and federal cases.  The Government advised the Court of its understanding that Mr. Lamar would receive credit against his federal sentence for the time he had spent in state custody between August 27, 2022, and November 9, 2022. (Dkt. #25 at 6).  The Court then asked the Government about its knowledge of the contemplated resolution of Mr. Lamar's state case; the prosecutor advised that the "case is currently still ongoing, and it's sort of been on hold pending the sentencing in this matter." (*Id.* at 8).  When the

---

[1]    At sentencing, in anticipation of forthcoming amendments to the Guidelines that might be made retroactive, the Court calculated Mr. Lamar's criminal history with and without the amendments. (*See* Dkt. #25 at 7, 34-35; *see also id.* at 37 ("And ultimately, I've decided to impose a term of imprisonment at the midpoint of the applicable guidelines range or the high point of the amended guidelines range of 27 months.")).

3

Court asked defense counsel if he had "anything to add to that discussion,"

counsel responded in the negative.  (*Id.*).

Counsel for each side then offered oral sentencing presentations.  The

prosecutor sought an above-Guidelines sentence, noting in part that a prior

three-year term of imprisonment

> did nothing to deter [Mr. Lamar] from doing the exact
> same thing again, from possessing deadly weapons
> again, all that, including the fact that when he
> possessed the firearms that underlie the Kings County
> prosecution, as well as this conviction, he was on a term
> of parole for his earlier conviction for weapons
> possession.
>
> Specifically, with respect to the Kings County
> prosecution — and these are allegations that are
> contained in a police report and based on my
> discussions with the ADA in charge of that case — they
> allege that the defendant was arrested with a gun in a
> fanny pack, and that gun contained a high-capacity
> magazine with 31 rounds of ammunition.  And certainly
> that case is still ongoing and it's still pending in state
> court.  There has been no conviction at this moment.
> But we wanted to provide that information to the Court
> so that the Court sort of has the fullest picture as it
> relates to the defendant's history and characteristics.

(Dkt. #25 at 11).

Defense counsel sought a below-Guidelines sentence of 20 months'

imprisonment, citing the unfortunate circumstances of Mr. Lamar's

upbringing, his mental health issues, and the loss of several of Mr. Lamar's

friends to gun violence.  (Dkt. #25 at 17-18).  Defense counsel also referred to

the pending state action:

> [Mr. Lamar] understands that he has work to do.  And
> by no means, as your Honor has pointed out, is he
> seeking to evade punishment. He will be punished. We

> are understanding that he will serve a significant period of incarceration in this case. *We also know that there is a good chance that he will face more punishment in state court.*

(*Id.* at 23-24 (emphasis added)). Finally, the Court heard from Mr. Lamar concerning his conduct. (*Id.* at 28-29).

After hearing from the parties, and taking a break to consider the written and oral sentencing submissions, the Court determined to sentence Mr. Lamar principally to a term of 27 months' imprisonment, citing the seriousness of the underlying conduct, Mr. Lamar's repeated unlawful possessions of firearms, his flight from law enforcement officers, and his posting of gang-related social media. (Dkt. #25 at 35-36). Because the Court understood that the KCDAO prosecution had not been resolved, it did not express an intention to run its sentence concurrently with or consecutive to the sentence that would later be imposed in that case.

## B.    The Proceedings in New York State Supreme Court, Kings County

At the time of the instant prosecution, Mr. Lamar was also a defendant in *People* v. *Lamar*, Indictment No. 73664-2021, in New York State Supreme Court, Kings County. The Court has learned that, in February 2023, Mr. Lamar's defense counsel in the state case reached out to the KCDAO to discuss a possible disposition of that case in which (i) Mr. Lamar's state and federal sentences would run concurrently and (ii) his federal sentence would commence before any plea in the state case, in order to prevent the assessment of additional criminal history points in the federal case. (Dkt. #32). According to the Government,

> on or about March 9, 2023, the defendant's State Case counsel had further discussions regarding a plea with a concurrent sentence with the KCDAO, which notated in its case file that the State Case plea should run concurrent to a sentence in the federal case following an anticipated federal plea in the upcoming two weeks.

(*Id.* at 1).  Mr. Lamar pleaded guilty in the Kings County case on or about September 26, 2023, and was sentenced in that case on October 30, 2023.  (*Id.* at 2).

According to Mr. Lamar, his sentencing judge in the state case, Justice Dineen Riviezzo, imposed a term of imprisonment of three years, to be followed by a term of post-release supervision of five years.  (Dkt. #28 at 2).  Justice Riviezzo specifically ordered the term of imprisonment in the state case to run concurrently with the term imposed by this Court, citing the plea agreement between the parties in the state case.  (*Id.*).

## C.    The Instant Motion

Attorneys from the Federal Defenders of New York entered notices of appearance as counsel for Mr. Lamar in February 2026.  (Dkt. #27, 30).  On February 9, 2026, new defense counsel submitted a letter motion requesting that this Court enter an order recommending that the BOP designate a New York State Correctional Facility as the place of confinement for service of Mr. Lamar's federal sentence, *nunc pro tunc.*  (Dkt. #28).  Defense counsel explained that, given Mr. Lamar's initial arrest by state law enforcement officers, the BOP considered him a state prisoner, and did not begin to credit him for his federal sentence until he was granted parole by New York state authorities on September 26, 2025.  (*Id.* at 2).  As a practical matter, therefore,

Mr. Lamar's federal sentence now runs consecutively to the state sentence, in derogation of Justice Riviezzo's order.

By letter dated March 10, 2026, the Government opposed Mr. Lamar's motion. (Dkt. #31). Among other things, the Government noted that this Court had refrained from considering the conduct alleged in the state case — specifically because that case was still pending — and that Mr. Lamar had cited the possibility of additional (*i.e.*, consecutive) time in the state case as a basis for leniency. (*Id.* at 2). The Government also noted that Justice Riviezzo's intent, however clearly expressed, was not binding on this Court or the BOP. (*Id.* at 3). "At bottom," the Government argued, "the goals of the criminal justice system and the Section 3553(a) factors are best served in this case by consecutive sentences." (*Id.* at 4). The Court sought additional information regarding the plea negotiations with the KCDAO, which information was provided by the Government in a letter dated March 26, 2026. (Dkt. #32).

## DISCUSSION

The Court pauses to make one point clear: The record now before the Court suggests strongly that Mr. Lamar, and his then-counsel Mr. Ma, were aware at the time of the sentencing in this case that Mr. Lamar had negotiated a plea deal in the state action for the imposition of concurrent sentences. If indeed Mr. Ma was aware of the contemplated resolution of Mr. Lamar's state case, the Court is disappointed that he did not provide this information when

7

specifically requested by the Court.  But the Court will not visit on Mr. Lamar's current counsel the possible sins of his prior counsel.

The authority to order a federal sentence concurrent with or consecutive to any other sentence rests with the federal sentencing court at the time of sentencing.  *See Setser* v. *United States*, 566 U.S. 231, 237 (2012).  That authority extends to a state sentence that is anticipated, but has yet to be imposed.  *Id.* at 236, 244-45; *see also United States* v. *Rivera-Santiago*, 834 F. App'x 630, 633-34 (2d Cir. 2020) (summary order) ("[T]he [Supreme] Court's holding in *Setser* was based on a recognition of courts' longstanding discretion to impose a sentence to 'run concurrently or consecutively with respect to other sentences ... including state proceedings' and to abide by 'principles of federalism.'" (quoting *Setser*, 566 U.S. at 236-37)).  What is more, a determination by a state sentencing court "that the state sentence should run concurrently to the federal sentence ... is not binding on federal authorities." *Abdul-Malik* v. *Hawk-Sawyer*, 403 F.3d 72, 75 (2d Cir. 2005).

As the Second Circuit recently observed, "[t]he Supreme Court itself has recognized that where a district court lacks adequate information 'to impose anticipatory consecutive (or concurrent) sentences intelligently,' it may forbear from doing so." *United States* v. *Bagley*, No. 24-2758, 2026 WL 876962, at *3 (2d Cir. Mar. 31, 2026) (summary order) (quoting *Setser*, 566 U.S. at 242 n.6 (2012)) (citing *United States* v. *Tisdol*, No. 21-2667-cr, 2023 WL 2441680, at *1 (2d Cir. Mar. 10, 2023) (summary order) (affirming district court's decision to forbear ruling on whether federal sentence should run consecutively or

concurrently to not-yet-imposed state sentence)).  In the instant case, the Court elected not to address the concurrency/consecutivity issue, precisely because it believed it lacked adequate information to do so.

Mr. Lamar is now in the custody of the BOP.  Pursuant to 18 U.S.C. § 3621, the BOP has the authority to "designate the place of the prisoner's imprisonment," and it "may designate any available penal or correctional facility ... whether maintained by the Federal Government or otherwise."  18 U.S.C. § 3621(b); *see also United States* v. *Campbell*, No. 14 Cr. 231 (RA), 2024 WL 1521311, at *1 (S.D.N.Y. Apr. 5, 2024).  Section 3621 thus "grants broad discretion to the [BOP] in designating a place of imprisonment," and it "gives the [BOP] authority to make [a] *nunc pro tunc* designation sought by" a prisoner.  *McCarthy* v. *Doe*, 146 F.3d 118, 123 (2d Cir. 1998).  "Although such authority ultimately lies with the BOP, this Court may make a non-binding recommendation to the BOP so that the prisoner's federal sentence will be deemed to have run concurrently with his state sentence."  *United States* v. *Fernandez*, No. 06 Cr. 484 (LAP), 2023 WL 8006268, at *3 (S.D.N.Y. Nov. 16, 2023); *accord United States* v. *Difo*, No. 21 Cr. 434 (DEH), 2025 WL 3719412, at *2 (S.D.N.Y. Dec. 23, 2025).

As noted, this Court deliberately refrained from addressing the concurrency issue because it lacked information regarding the contemplated disposition of Mr. Lamar's state case.  Importantly, however, had the Court been made aware of the plea agreement in the state case — in particular, the parties' agreement to run the state sentence concurrently with the federal — it

9

would have exercised its discretion to remain silent and allowed Justice Riviezzo to impose the sentence in her case to run concurrently with this one. *See Campbell*, 2024 WL 1521311, at *1 ("The Court thus finds a recommendation that [the defendant's] federal sentence be retroactively designated as concurrent to his state sentence to be appropriate 'because it accords with the ... intention at the original sentencing of ensuring that [the defendant's] receives sufficient punishment for his serious federal crime,' as well as because it 'respects the integrity of the [s]tate [c]ourt's sentence which ... took into account the already-imposed federal sentence.'" (quoting *United States* v. *Alvarez*, No. 09 Cr. 386 (DAB), 2015 WL 1851658, at *4 (S.D.N.Y. Apr. 17, 2015))).  As a result, the Court will adopt defense counsel's suggestion that it recommend to the BOP that it designate a New York State Correctional Facility as the place of confinement for service of Mr. Lamar's federal sentence, *nunc pro tunc*, which designation may allow his federal sentence to run concurrently with his state sentence and allow him to be released from custody and begin his terms of state and federal supervision.

## CONCLUSION

For the foregoing reasons, the Court grants Mr. Lamar's request and recommends to the BOP that it designate a New York State Correctional Facility as the place of confinement for service of Mr. Lamar's federal sentence, *nunc pro tunc* from August 27, 2022, the date of his original arrest by the NYPD on this charge.  The Government is directed to transmit a copy of this Order to the BOP.

The Clerk of Court is directed to terminate the motion pending at docket entry 28.

SO ORDERED.

Dated:    April 20, 2026
          New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

11